| | | | | |
|---|---|---|---|---|
| Debtor 1 | Ann Marie Given | | | |
| | First Name | Middle Name | Last Name | |
| Debtor 2 | | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name | |

United States Bankruptcy Court for the: Middle District of Pennsylvania

Case number **19-01314**
(If known)

## Official Form 427

# Cover Sheet for Reaffirmation Agreement

12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

---

**Part 1:** Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the creditor?**

Community Bank, N.A.
Name of the creditor

**2. How much is the debt?**

On the date that the bankruptcy case is filed $ 2,389.74

To be paid under the reaffirmation agreement $ 2,389.74

$ 197.72 per month for 12 months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**

Before the bankruptcy case was filed 3.39 %

Under the reaffirmation agreement 3.39 % ☑ Fixed rate
☐ Adjustable rate

**4. Does collateral secure the debt?**

☐ No
☑ Yes. Describe the collateral. 2012 Ford Fusion #3FAHP0HA8CR138794

Current market value $ 4,885.00

**5. Does the creditor assert that the debt is nondischargeable?**

☑ No
☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from Schedule I: Your Income (Official Form 106I) and Schedule J: Your Expenses (Official Form 106J), fill in the amounts.**

| Income and expenses reported on Schedules I and J | Income and expenses stated on the reaffirmation agreement |
|---|---|
| 6a. Combined monthly income from line 12 of Schedule I  $ 2,553.97 | 6e. Monthly income from all sources after payroll deductions  $ 2,553.97 |
| 6b. Monthly expenses from line 22c of Schedule J  – $ - 0 - | 6f. Monthly expenses  – $ - 0 - |
| 6c. Monthly payments on all reaffirmed debts not listed on Schedule J  – $ 2,553.33 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses  – $ 2,553.33 |
| 6d. Scheduled net monthly income  $ 0.64  Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets. | 6h. Present net monthly income  $ 0.64  Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets. |

Case 5:19-bk-01314-RNO   Doc 10   Filed 05/10/19   Entered 05/10/19 14:21:36   Desc
Main Document    Page 1 of 16

| | | |
|---|---|---|
| 7. | Are the income amounts on lines 6a and 6e different? | ☒ No<br>☐ Yes.   Explain why they are different and complete line 10. _____<br><br>_____ |
| 8. | Are the expense amounts on lines 6b and 6f different? | ☒ No<br>☐ Yes.   Explain why they are different and complete line 10. _____<br><br>_____ |
| 9. | Is the net monthly income in line 6h less than 0? | ☒ No<br>☐ Yes.   A presumption of hardship arises (unless the creditor is a credit union).<br>      Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses.<br>      Complete line 10.<br><br>_____<br><br>_____ |

**10. Debtor's certification about lines 7-9**

If any answer on lines 7-9 is *Yes*, the debtor must sign here.

If all the answers on lines 7-9 are *No*, go to line 11.

I certify that each explanation on lines 7-9 is true and correct.

✖ _____     ✖ _____

Signature of Debtor 1               Signature of Debtor 2 (Spouse Only in a Joint Case)

| | | |
|---|---|---|
| 11. | Did an attorney represent the debtor in negotiating the reaffirmation agreement? | ☐ No<br>☒ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>     ☐ No<br>     ☒ Yes |

---

**Part 2:   Sign Here**

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement*.

✖ *Heather Cushing*          Date 05/10/2019

Signature                                  MM / DD / YYYY

*Heather Cushing*

Printed Name

Check one:

☐ Debtor or Debtor's Attorney

☒ Creditor or Creditor's Attorney

> ☐ **Presumption of Undue Hardship**
> ☒ **No Presumption of Undue Hardship**
> (Check box as directed in Part D: Debtor's Statement
> in Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT
## MIDDLE District of PENNSYLVANIA

In re ANN MARIE GIVEN ,                    Case No. 19-01314
          Debtor                            Chapter 7

## REAFFIRMATION AGREEMENT
*[Indicate all documents included in this filing by checking each applicable box.]*

☒ Part A: Disclosures, Instructions, and     ☒ Part D: Debtor's Statement in
    Notice to Debtor (pages 1 - 5)               Support of Reaffirmation Agreement

☒ Part B: Reaffirmation Agreement            ☐ Part E: Motion for Court Approval

☒ Part C: Certification by Debtor's Attorney

*[Note: Complete Part E only if debtor was not represented by an attorney during
the course of negotiating this agreement. Note also: If you complete Part E, you must
prepare and file Form 2400C ALT - Order on Reaffirmation Agreement.]*

**Name of Creditor:** COMMUNITY BANK, N.A.

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the
    Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1.    DISCLOSURE STATEMENT

***Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:***

**SUMMARY OF REAFFIRMATION AGREEMENT**
This Summary is made pursuant to the requirements of the Bankruptcy Code.

**AMOUNT REAFFIRMED**

The amount of debt you have agreed to reaffirm:          $ 2,389.74

*The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have
accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional
amounts which may come due after the date of this disclosure. Consult your credit agreement.*

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

    a.  If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement:  _____%.

--- <em>And/Or</em> ---

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:  _____%.  If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$ _____ @ _____%;
$ _____ @ _____%;
$ _____ @ _____%.

    b.  If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed:  __3.39__%.

--- And/Or ---

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:  _____%.  If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$ _____ @ _____ %;
$ _____ @ _____ %;
$ _____ @ _____ %.

    c.  If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

    The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

    d.  If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

<u>Item or Type of Item</u>                          <u>Original Purchase Price or Original Amount of Loan</u>

2012 FORD FUSION                             $13,250.00
3FAHP0HA8CR138794

*<u>Optional</u>---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of $_____ is due on _____(date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

*— Or —*

Your payment schedule will be: _____12_____ (number) payments in the amount of $ _197.72_ each, payable (monthly, annually, weekly, etc.) on the _28TH_ (day) of each _MONTH_ ( week, month, etc.), unless altered later by mutual agreement in writing.

*— Or —*

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

    **2. INSTRUCTIONS AND NOTICE TO DEBTOR**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

## Frequently Asked Questions:

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A ''lien'' is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the property securing the lien if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you must make a single payment to the creditor equal to the amount of the allowed secured claim, as agreed by the parties or determined by the court.

> NOTE: When this disclosure refers to what a creditor ''may'' do, it does not use the word "may" to give the creditor specific permission. The word ''may'' is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

## PART B: REAFFIRMATION AGREEMENT.

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:

   SEE ATTACHED

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

SIGNATURE(S):

Borrower:                                          Accepted by creditor:

*Ann-Marie Given*                                  COMMUNITY BANK, N.A.
(Print Name)                                       (Printed Name of Creditor)

*Ann Marie Given*                                  P.O. BOX 509, CANTON, NY 13617
(Signature)                                        (Address of Creditor)
Date: 4/30/19                                       *Heather Cushing*    Recovery
                                                   (Signature)          Administrative
                                                   *Heather Cushing*    Assistant
Co-borrower, if also reaffirming these debts:      (Printed Name and Title of Individual
                                                   Signing for Creditor)
_____
(Print Name)

                                                   Date of creditor acceptance:
_____
(Signature)                                        05/10/2019

Date: _____

## PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: _Timothy B. Fisher II_

Signature of Debtor's Attorney: _____

Date: _5/6/19_

## PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

*[Read and complete sections 1 and 2, **OR**, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2 **and** your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $2,553.9, and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $2,333.33, leaving $ 220.04 to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: _____

_____

_____ .

**(Use an additional page if needed for a full explanation.)**

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: ___*Quen Marie Livell*___
      (Debtor)

_____
(Joint Debtor, if any)

Date: ___4/30/19___

*— Or —*

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
      (Debtor)

_____
(Joint Debtor, if any)

Date: _____

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ _____500.00_____. |
|---|---|---|---|---|
| 3.39 % | $ 1370.84 | $ 12865.00 | $ 14235.84 | $ 14735.84 |

**Your Payment Schedule will be:**

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 197.72 | Monthly, beginning 04/28/2014 |
| | $ N/A | N/A |
| | $ N/A | |

Filing Fees: $ _____

Late Charge: If a payment is late, you will be charged 2% of the portion of the payment which is late for each month, or part of a month greater than 10 days, that it remains unpaid.

See below and any other Contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
e means estimate

**Security:** You are giving a security interest in the motor vehicle being purchased.

**Prepayment:** If you pay off early, you will not have to pay a penalty.

IF YOU DO NOT MEET YOUR CONTRACT OBLIGATIONS, YOU MAY LOSE THE MOTOR VEHICLE AND PROPERTY THAT YOU BOUGHT WITH THIS CONTRACT, AND/OR MONEY ON DEPOSIT WITH THE ASSIGNEE.

This Contract is between Seller and Buyer. All disclosures may be made by Seller. Seller intends to assign this Contract to the Assignee.

In this Contract we are the SELLER. **Colonial Used Auto Sales, Inc.  PoBx 71,1331 Golden Slipper Rd  Bartonsville, PA  18321**
_____Name_____ _____Address_____ _____Zip Code_____

County **Monroe**

You are the BUYER(S). **ANN MARIE GIVEN   1427 ROUTE 715   STROUDSBURG, PA   18360**
_____Name(s)_____ _____Address(es)_____ _____Zip Code(s)_____

County **MONROE**

If there is more than one Buyer, each promises, separately and together, to pay all sums due us and to perform all agreements in this Contract.

**TRADE-IN:**
You have traded in the following vehicle: _____
_____Year and Make_____ _____Description_____

If a balance is still owing on the vehicle you have traded in, the Seller will pay off this amount on your behalf. You warrant and represent to us that any trade-in is free from lien, claim, encumbrance or security interest, except as shown in the Itemization of Amount Financed as the "Lien Payoff."

**PROPERTY INSURANCE:** You may choose the person through whom insurance is obtained against loss or damage to the Vehicle and against liability arising out of use or ownership of the Vehicle. In this Contract, you are promising to insure the Vehicle and keep it insured.

**DEBT CANCELLATION (GUARANTEED AUTO PROTECTION) AGREEMENT IS VOLUNTARY AND NOT REQUIRED AS A CONDITION OF THE CREDIT.** This agreement will not be provided unless you sign below, agree to pay the additional charge, and sign the separate disclosure and agreement page, which is part of this Contract. This agreement will apply during the entire term of the Contract. This agreement may not cover your entire indebtedness; see the MAXIMUM PROTECTION amount stated in the separate disclosure and agreement.

| Type of Debt Cancellation Agreement | Charge | Signature |
|---|---|---|
| Guaranteed auto protection (GAP) | $ N/A | By signing, you select guaranteed auto protection _____ Signature of Buyer |

**SERVICE CONTRACT OR WARRANTY AGREEMENT IS VOLUNTARY AND NOT REQUIRED AS A CONDITION OF THE CREDIT.** The service contract or warranty agreement will not be provided unless you sign the separate agreement with the third party provider, who is not the Seller named above, and agree to pay the additional charge. This section does not apply to any warranty that you may receive for which there is not separate charge.

**CREDIT INSURANCE IS NOT REQUIRED:** Credit Life Insurance and Credit Accident & Health (Disability) Insurance are not required to obtain credit, and will not be provided unless you sign below and agree to pay the additional cost(s). Please read the NOTICE OF PROPOSED CREDIT INSURANCE on the reverse side. Your insurance certificate or policy will tell you the MAXIMUM amount of insurance available. All insurance purchased will be for the term of the credit. We may receive a financial benefit from your purchase of credit insurance.

By signing, you select Single Credit Life Insurance, which costs $ __N/A__    What is your age? __N/A__ Years

_____
Signature of Buyer to be insured for Single Credit Life Insurance

By signing, you both select Joint Credit Life Insurance, which costs $ __N/A__    What are your ages?

1. _____ __N/A__

2. _____ __N/A__
Signatures of both Buyers to be insured for Joint Credit Life Insurance

By signing, you select Single Credit Accident & Health Insurance, which costs $ __N/A__    What is your age? __N/A__ Years

_____
Signature of Buyer to be insured for Single Credit Accident & Health Insurance

By signing, you both select Joint Credit Accident & Health Insurance, which costs $ __N/A__    What are your ages?    Percentage to be insured

1. _____ __N/A__ ____%

2. _____ __N/A__ ____%
Signatures of both Buyers to be insured for Joint Credit Accident & Health Insurance

**Itemization of Amount Financed**

Cash Price (including optional service contract and/or warranties in the amount of $ __N/A__ *,
paid to _____
& sales tax of $ __750.00__ ):

Cash Price $ 13250.00

Cash Downpayment $ 500.00

Trade-In Value of Trade-In __N/A__

Lien Payoff to: $ __N/A__

Unpaid Cash Price Balance $ 12750.00

Optional Debt Cancellation (GAP) $ __N/A__

Document Preparation Fee $ 46.50

Paid to Others on Your Behalf

To Public Officials for:
License, Tags and Registration $ 58.50

Lien Fee $ __N/A__

Taxes Not Included in Cash Price $ __N/A__
To **Colonial Used Auto** $ 10.00

For Messenger Service
To _____ $ __N/A__

For _____
To Credit Insurance Company __N/A__ *
For _____ __N/A__ *

Signatures of both Buyers to be insured for Joint Credit Life Insurance

Signatures of both Buyers to be insured for Joint Credit Accident & Health Insurance

| For | | |
|---|---|---|
| To | | |
| $ | | N/A * |
| To | | |
| $ | | N/A * |
| For | | |
| To | | |
| $ | | N/A * |
| For | | |
| To | | |
| $ | | N/A * |
| For | | |
| To | | |
| $ | | N/A * |
| For | | |
| Amount Financed | | |
| $ | | 12865.00 |

We may retain a portion of amounts marked*

Insurer:

**VEHICLE:** You have agreed to purchase, under the terms of this Contract, the following motor vehicle and its extra equipment, which is called the "Vehicle" in this Contract.

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|
| **USED** | **2012 FORD** | **FUSION** | **SEDAN 4 DOOR** | **4** | | **3FAHP0HA8CR138794** |

Equipped with ___ A.T. ___ P.S. ___ AM-FM Stereo ___ 5 Spd. ___ Other ___
___ A.C. ___ P.W. ___ AM-FM Tape ___ Vinyl Top ___

**ASSIGNEE:** We may assign this Contract and Security Agreement to a sales finance company which is the "Assignee." If the Assignee assigns the Contract to a subsequent assignee, the term also refers to such subsequent assignee. After the assignment, all rights and benefits of the Seller in this Contract and in the Security Agreement shall belong to and be enforceable by the Assignee. The Assignee will notify you when and if Seller makes an assignment.

## COMMUNITY BANK, NATIONAL ASSOCIATION d/b/a FIRST LIBERTY BANK & TRUST
### P.O. Box 628, Olean, New York 14760

**CO-SIGNER:** Any person signing the Co-Signer's Agreement below promises separately and together with all Co-Signer(s) and Buyer(s), to pay all sums due and to perform all agreements in this Contract. **Co-Signer will not be an Owner of the Vehicle.**

**CO-OWNER:** Any person signing the Co-Owner's Security Agreement below gives us a security interest in the Vehicle and agrees separately and together with all Co-Owner(s) and Buyer(s), to perform all agreements in the Security Agreement and all other parts of this Contract except the "Promise to Pay" section.

**TERMS:** The terms shown in the boxes above are part of this Contract.

**PROMISE TO PAY:** You agree to pay us the Total Sale Price for the Vehicle by making the Cash Downpayment and assigning the Trade-In, if shown above, on or before the date of this Contract, and paying us the Amount Financed plus interest. Your promise to make payments in accordance with the Payment Schedule. You promise to make payments on or before the same day of each month as the first payment due date. You agree to pay all other amounts which may become due under the terms of this Contract. You agree to pay the Seller or Assignee costs of suit. You also agree to pay reasonable attorneys' fees if Seller or Assignee hires an attorney to collect amounts due under this Contract or to protect or get possession of the Vehicle. You agree to make payments at the place or to send payments to the address which the Assignee most recently specifies in the written notice to you. This Contract is null and void if assigned to any lender other than Community Bank NA d/b/a First Liberty Bank & Trust (in Pennsylvania) or Community Bank NA, its successors and assigns.

**SECURITY AGREEMENT:** To secure the payment of all sums due and the performance of all required obligations under this Contract, you give a security interest in the Vehicle, in all parts

(called "accessions") attached to the Vehicle at any later time, and in any proceeds of the Vehicle, including insurance proceeds. The Assignee may set-off any amounts due and unpaid under this Contract against any of your money on deposit with Assignee. This includes any money which is now or may in the future be deposited with Assignee by you. Assignee may do this without any prior notice to you.

**ADDITIONAL DISCLOSURES, TERMS AND CONDITIONS:**
**Disclosures:** Before signing this Contract, be sure that you receive and read the Disclosure to Buyer.

**Terms and Conditions:** Before signing this Contract, be sure you receive and read the following, if marked X, which are additional pages to and part of this Contract.

☒ This Contract continues on the reverse side.
☐ Debt Cancellation (guaranteed auto protection) separate disclosure and agreement.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

By signing below, we agree to sell the Vehicle to you under the terms of this Contract.

**NOTICE TO BUYER—DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.**

SELLER **Colonial Used Auto Sales, Inc.**

BUYER _Ann-Marie Lewis_ (SEAL) 03/29/1 Date

BY: _[signature]_ Date 03/29/14

BUYER _____ (SEAL) _____ Date

**CO-SIGNER: YOU SHOULD READ THE NOTICE TO CO-SIGNER, WHICH HAS BEEN GIVEN TO YOU ON A SEPARATE DOCUMENT, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.**
**CO-SIGNER'S AGREEMENT:** You, the person (or persons) signing below as "Co-Signer," promise to pay to us all sums due on this Contract and to perform all agreements in this Contract. You intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. You are making this promise to induce us to make this Contract with the Buyer, even though we will use the proceeds only for the Buyer's benefit. You agree to pay even though we may not have made any prior demand for payment on the Buyer or exercised our security interest. You also acknowledge receiving a completed copy of this Contract.

_____ (SEAL)
Co-Signer's Signature | Address | Date

_____ (SEAL)
Co-Signer's Signature | Address | Date

**CO-OWNER'S SECURITY AGREEMENT:** You, the person signing below as "Co-Owner," together with the Buyer or otherwise being all of the Owners of the Vehicle, give us a Security Interest in the Vehicle identified above. You agree to be bound by the terms of the Security Agreement and all other parts of this Contract except the "Promise To Pay" section. You are giving us the security interest to induce us to make this Contract with the Buyer, and to secure the payment by the Buyer of all sums due on this Contract. You will not be responsible for any deficiency which might be due after repossession and sale of the Vehicle.

_____ (SEAL)
Co-Owner's Signature | Address | Date

## BUYER, CO-SIGNER AND CO-OWNER, IF APPLICABLE, ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS CONTRACT AT THE TIME OF SIGNING, INCLUDING THE ADDITIONAL DISCLOSURES AND PAGES LISTED IN THE SECTION CALLED ADDITIONAL DISCLOSURES, TERM AND CONDITIONS.

_Ann-Marie Lewis_
BUYER | BUYER | CO-SIGNER | CO-SIGNER OR CO-OWNER

### NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

FORM CBNARSMVDCPA (PAS123DCSLC-3) 2/17/2010 (L-318pa)
© 2004 Wolters Kluwer Financial Services - BANCO    ORIGINAL - White • DEALER COPY - Canary • BORROWER'S/CO-SIGNER'S COPY - Pink • COPY - Goldenrod

APR 0 3 2014

**1. HOW THE TOTAL OF PAYMENTS IS COMPUTED:** The Total of Payments is the sum of the Amount Financed and the Finance Charge. The Finance Charge consists solely of interest computed daily on the outstanding balance of the Amount Financed. The Finance Charge shown on the front side has been computed on the assumption that we will receive all payments on their scheduled due dates.

**2. COMPUTING INTEREST:** We will charge interest on a daily basis on the outstanding balance subject to interest on each day of the loan term, including any period for which a late charge is also imposed. The daily interest rate is equal to the Annual Percentage Rate divided by the number of days in that calendar year. Buyer agrees that because interest is calculated on a daily basis, late payments will result in additional interest (and, if applicable, a late charge). Early payments will result in less interest being charged. Early and/or late payments will cause the amount of the final payment to change.

**3. LATE CHARGE:** Buyer agrees to pay a late charge for any payment not made within 10 days after its due date. The late charge will be 2% per month on the unpaid amount of the payment. We will consider any part of a month in excess of 10 days to be a full month. The late charge will be due when earned. No late charge will be due if the reason that the payment is late is because, after default, the entire outstanding balance on this Contract is due. No late charge will be due if the only reason that the payment is late is because of a late charge assessed on an earlier payment.

**4. APPLICATION OF PAYMENTS:** We will apply payments in the following order of priority: first to interest; and then to late charges, fees, principal and any other amounts you owe in the order that we choose.

**5. PREPAYMENT:** You may prepay, in full or in part, the amount owed on this Contract at any time without penalty. If you prepay the Contract in part, you agree to continue to make regularly scheduled payments until you pay all amounts due under this Contract. This will reduce the number of payments you will make.

**6. WAIVERS.**

**a. WAIVER BY SELLER AND ASSIGNEE:** We and Assignee waive the right to treat any property as security for the repayment of this Contract, except for the Vehicle and the other security specifically mentioned in this Contract.

**b. WAIVERS BY BUYER, CO-SIGNER AND CO-OWNER:** You agree to make all payments on or before they are due without our having to ask. If you don't, we may enforce our rights without notifying you in advance. You give up any right you may have to require that we enforce our rights against some other person or property before we enforce our rights against you. You agree that we may give up our rights against some other person but not against you. You waive due diligence in collection and all defenses based on suretyship and impairment of collateral or security.

**7. INTEREST AFTER MATURITY AND JUDGMENT:** Interest at the rate provided in this Contract shall continue to accrue on the unpaid balance until paid in full, even after maturity and/or after we get a judgment against you for the amounts due. This will apply even if the maturity occurs because of acceleration. If at any time interest as provided for in this paragraph is not permitted by law, interest shall accrue at the highest rate allowed by applicable law beginning at that time.

**8. YOUR PROMISES ABOUT OUR SECURITY INTEREST:** You will not permit anyone other than us to obtain a security interest or other rights in the Vehicle. You will pay all filing fees necessary for us to obtain and maintain our security interest in the Vehicle. You will assist us in having our security interest noted on the Certificate of Title to the Vehicle. You will not sell or give away the Vehicle. If someone puts a lien on the Vehicle, you will pay the obligation and clear the lien.

**9. YOUR PROMISES ABOUT THE VEHICLE:** You will keep the Vehicle in good condition and repair. You will pay all taxes and charges on the Vehicle. You will pay all costs of maintaining the Vehicle. You will not abuse the Vehicle or permit anything to be done to the Vehicle which will reduce its value, other than for normal wear and use. You will not use the Vehicle for illegal purposes or for hire or lease. You will not move the Vehicle from your address shown on the front of this Contract to a new permanent place of garaging without notifying us in advance.

**10. YOUR PROMISES ABOUT INSURANCE:** You will keep the Vehicle insured against fire, theft and collision until all sums due us are paid in full. The insurance coverage must be satisfactory to us and protect your interests and our interests at the time of any insured loss. The insurance must name us as "loss-payee" on the policy. The insurance must be written by an insurance company qualified to do business in Pennsylvania and licensed to sell insurance in the state where the Vehicle is permanently garaged. The insurance policy must provide us with at least ten (10) days prior written notice of any cancellation or reduction in coverage. On request, you shall deliver the policy or other evidence of insurance coverage to us. In the event of loss or damage to the Vehicle, you will immediately notify us in writing and file a proof of loss with the insurer.

**a. OUR RIGHT TO FILE PROOF OF LOSS:** In the event of any loss or damage to the Vehicle, if you fail or refuse to file a claim or proof of loss with the insurance company, you agree that the Seller, Assignee, any subsequent assignee, or any authorized employee of any of them ("we") may file a proof of loss with the insurance company, in your name and acting as your agent, with respect to the insured claim. You agree that you do not have the right to and will not revoke the power you have given us to file a proof of loss. You agree that we may exercise this power for our benefit and not for your benefit, except as provided in this Contract and by law.

**b. OUR RIGHT TO ENDORSE INSURANCE CHECKS:** You agree that the Seller, Assignee, any subsequent assignee, or an authorized employee of any of them ("we") may endorse your name, acting as your agent, to any check, draft or other instrument we receive in payment of an insured loss or return of insurance premiums. You agree that you do not have the right to and will not revoke the power you have given us to make your endorsement. You agree that we may exercise this power for our benefit and not for your benefit, except as provided in this Contract and by law.

**c. USE OF PROCEEDS:** We may apply any insurance proceeds we receive to repair or replace the Vehicle if, in our opinion, it is economically feasible and you are not then in default of this Contract. Otherwise, we will apply the insurance proceeds to reduce the unpaid balance due us. After the balance due us is paid, any excess will belong to you.

**11. OUR RIGHTS IF YOU BREAK YOUR PROMISES ABOUT THE SECURITY INTEREST, VEHICLE OR INSURANCE:** If you fail to keep your promises to pay filing fees, taxes, liens or other amounts due, or fail to keep the Vehicle in good condition and repair, we may advance any money you promised to pay. If you fail to keep your promises about required insurance, we may advance money to obtain insurance to cover loss or damage to the Vehicle. We have the

choice of whether or not to advance any money for these purposes. Such insurance will be limited to an amount not greater than you owe on this Contract. THE INSURANCE WE PURCHASE MAY BE SIGNIFICANTLY MORE EXPENSIVE AND PROVIDE YOU LESS COVERAGE THAN INSURANCE YOU COULD PURCHASE YOURSELF.

We will add any money we advance on your behalf to the balance on which we impose Finance Charges at the Annual Percentage Rate of this Contract. You agree to repay the money advanced as we alone may specify: (i) immediately on demand, or (ii) along with your monthly payments. If we choose to allow you to repay the money advanced along with your monthly payments, we can choose the amount of these payments and how long you have to repay. If any of our rights stated in this paragraph are not permitted by law, we still have the other rights mentioned. Our payments on your behalf will not cure your failure to perform your promises in this Contract.

**12. DEFAULT:** In this paragraph "You" means the Buyer, Co-Signer and Co-Owner, or any one of them. You will be in "Default" of the Contract if any one or more of the following things happen:

a. You do not make any payment on or before it is due; or

b. You do not keep any promise you made in this Contract; or

c. You do not keep any promise you made in another Contract, Note, Loan or Agreement with Seller or Assignee; or

d. You made any untrue statement in the credit application for this Contract; or

e. You committed any forgery in connection with this Contract; or

f. You die, are convicted of a crime involving fraud or dishonesty, or are found by a court with jurisdiction to do so to be incapacitated; or

g. You file bankruptcy or insolvency proceedings, or anyone files bankruptcy or insolvency proceedings against you; or

h. You take the Vehicle outside the United States or Canada without our written consent; or

i. You use the Vehicle or allow someone else to use it in a way that causes it not to be covered by your insurance; or

j. You do something that causes the Vehicle to be subject to confiscation by government authorities; or

k. The Vehicle is lost, stolen, destroyed or damaged beyond economical repair, and not fixed or insured within a reasonable time; or

l. Another creditor tries to take the Vehicle or your money on deposit with Assignee by legal process.

**13. OUR RIGHTS IF YOU ARE IN DEFAULT OF THIS CONTRACT:** If you are in Default of this Contract, we may enforce our rights according to law. We may also do the things specifically mentioned in this Contract. We may do one of these things and at the same time or later do another. Some of the things we may do are the following:

**a. ACCELERATION:** We can demand that you pay to us the entire unpaid balance owing on the Contract and all unpaid Finance Charges and other money due. You agree that you will pay this money to us in one single payment immediately upon receiving our demand.

**b. REPOSSESSION:** We can repossess the Vehicle, unless prohibited by law. We can do this ourselves, have a qualified person do it for us, or have a government official (by replevin) do it for us. You agree that we can peaceably come on to your property to do this. We may take any other things found in the Vehicle, but will return these things to you if you ask. If you want these things back, you may reclaim them within thirty (30) days of our mailing you a Notice of Repossession. If you do not reclaim the things found in the Vehicle within that time, we may dispose of these things in the same manner as the motor vehicle. You agree that we may use your license plates in repossessing the Vehicle and taking it to a place for storage.

**c. VOLUNTARY DELIVERY:** We can ask you to give us the Vehicle at a reasonably convenient place. You agree to give us the Vehicle if we ask.

**d. DELAY IN ENFORCEMENT:** We can delay enforcing our rights under this Contract without losing any rights.

**14. SOME THINGS YOU SHOULD KNOW IF WE REPOSSESS THE VEHICLE:** If we repossess without using a government official (by replevin):

**a. NOTICE:** We will send you a Notice of Repossession to your last address we know about. This Notice will tell you how to buy back (redeem) the Vehicle. You will NOT have the right to reinstate the Contract. This means you will have to pay the total balance on the Contract and other amounts due. You may not get the Vehicle back by paying delinquent installments. This Notice will tell you other information required by law.

**b. REDEMPTION:** You have the right to buy back (redeem) the Vehicle within 15 days of the mailing of the Notice and at any later time before we sell the Vehicle. If you redeem the Vehicle, we will deliver the Vehicle to you at a place as provided by law, as soon as is reasonably possible, but in not more than ten (10) business days of our receipt of the funds required. If you do not redeem, you give up all claim to the Vehicle.

**c. SALE:** If you don't redeem, we will sell the Vehicle. The money received at sale will be used to pay costs and expenses you owe, and then to pay the amount you owe on the Contract.

**d. SURPLUS OR DEFICIENCY:** If there is money left, we will pay it to the Buyer. If there is not enough money from the sale to pay what you owe, Buyer and Co-Signer agree to pay what is still owed to us.

**e. EXPENSES:** You agree to pay the costs of repossessing, storing, repairing, preparing for sale and selling the Vehicle as may be allowed by law. These costs will only be due if:

1. Default exceeds fifteen (15) days at the time of repossession;

2. The amount of costs are actual, necessary and reasonable; and

3. We can prove the costs were paid.

**15. HEIRS AND PERSONAL REPRESENTATIVES BOUND:** After your death, this Contract shall be enforceable against your heirs and personal representatives of your estate.

**16. GOVERNING LAW:** This Contract is to be interpreted according to the law of Pennsylvania.

**17. SEVERABILITY OF PROVISIONS:** If for any reason any part of this Contract shall become illegal, void or unenforceable, that part shall not be a part of this Contract.

**18. ASSIGNMENT BY BUYER:** Buyer shall not assign this Contract.

**19. THERE ARE NO WARRANTIES BY SELLER, EXPRESSED OR IMPLIED, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, UNLESS WE HAVE GIVEN YOU A SEPARATE WRITTEN WARRANTY OR UNLESS SELLER ENTERS INTO A SERVICE CONTRACT WITH BUYER WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT.**

11. OUR RIGHTS IF YOU BREAK YOUR PROMISES ABOUT THE SECURITY INTEREST, VEHICLE OR INSURANCE: If you fail to keep your promises to pay filing fees, taxes, liens or the costs necessary to keep the Vehicle in good condition and repair, we may advance any money you promised to pay. If you fail to keep your promises about required insurance, we may advance money to obtain insurance to cover loss or damage to the Vehicle. We have the

15. THERE ARE NO WARRANTIES BY SELLER, EXPRESSED OR IMPLIED, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, UNLESS WE HAVE GIVEN YOU A SEPARATE WRITTEN WARRANTY OR UNLESS SELLER ENTERS INTO A SERVICE CONTRACT WITH BUYER WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT.

**Buyer's Guide Window Sticker.** If the Car which is described on the face of this Contract has a Buyer's Guide Window Sticker required by the Federal Trade Commission Used Car Trade Regulation Rule, the following notice applies:

The information you see on the window form for this Vehicle is part of this Contract. Information on the window form overrides any contrary provisions in the contract of sale.

NOTICE—ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

**NOTICE OF PROPOSED CREDIT INSURANCE**

The signer(s) of this Contract hereby take(s) notice that Group Credit Life Insurance coverage or Group Credit Accident and Disability Insurance coverage will be applicable to this Contract if so marked on the front of this Contract, and each such type of coverage will be written by the insurance company named. This insurance, subject to acceptance by the insurer, covers only the person or persons signing the request for such insurance. The amount of charge is indicated for each type of Credit Insurance to be purchased. The term of insurance will commence as of the date the indebtedness is incurred and will expire on the original scheduled maturity date of the indebtedness. Subject to acceptance by the insurer and within 30 days, there will be delivered to the insured debtor(s) a certificate of insurance more fully describing the insurance. In the event of prepayment of the indebtedness, a refund of insurance charges will be made when due.

**NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION.**
**THE PROVISION BELOW IS NOT PART OF THE PENNSYLVANIA MOTOR VEHICLE INSTALLMENT SALE CONTRACT BETWEEN THE BUYER AND SELLER.**

**ASSIGNMENT**

To induce you, the "Assignee" identified on the face of this Contract or as follows, _____ (Name) to purchase the within Contract, the Seller hereby warrants and represents, and continues to warrant and represent that: the sale has been made in strict conformity with all applicable federal, state and local laws and regulations, including, but not limited to, Article 2 of the Pennsylvania Uniform Commercial Code (13 Pa. C.S.A. §§2101 et seq); our title to the Contract and the Vehicle covered thereby is absolute, free of all liens, encumbrances and security interests, and is subject only to the rights of the Buyer as set forth therein; the Contract is genuine, the signatures thereon are not forgeries, arose from the sale of the Vehicle therein described, and all parties thereto are of full age and had capacity to contract; the description of the Vehicle and extra equipment is complete and correct; the cash downpayment and/or trade-in allowance were actually received and no part thereof consisted of notes, post-dated checks, other credit advanced by us to Buyer or rebates or similar payments from us to the Buyer (however manufacturer rebates may constitute all or a part of the downpayment); all warranties and statements therein are true; there is owing thereon the Amount Financed plus interest at the Annual Percentage Rate of the Contract set forth therein; we are duly licensed under the Pennsylvania Motor Vehicle Sales Finance Act and have duly complied with all requirements thereof with respect to the transaction and with the federal Truth-in-Lending Act and with any other federal or state law, rule or regulation applicable to this Contract; a motor vehicle title certificate showing a lien or encumbrance in favor of Assignee has been or will be applied for promptly; the registration of the Vehicle has not been suspended and the Seller knows of no facts which may result in the suspension of said registration under the Pennsylvania Motor Vehicle Financial Responsibility Act; the Buyer(s) named in the within Contract is (are) personally known to the Seller to be the same identical person(s) whose signature(s) is (are) affixed to this Contract; and Seller has no knowledge of facts impairing the validity or value of the Contract. If any such warranties or representations should be breached at any time, Seller shall repurchase said Contract from Assignee, on demand, and will pay therefor, in cash, the amount owing thereon, computed as set forth below, and said remedy shall be cumulative and not exclusive, and shall not affect any other right or remedy that Assignee might have at law or in equity against Seller. In the event that Buyer fails or refuses to make any payment due hereunder on the assertion, either oral or written, that the Vehicle is defective, not as represented to the Buyer by Seller, or that Seller refuses to honor any warranty or service agreement of Seller or manufacturer, Seller agrees that, on being advised by Assignee of such claim of Buyer, Seller will repurchase the Contract from Assignee and pay Assignee for same immediately in accordance with the repurchase terms set forth below, and Seller further agrees to hold Assignee harmless from any other claims of Buyer, including attorneys' fees, costs and expenses incurred in defending against claims asserted by Buyer and including claims for refund of payments made by Buyer to Assignee. If the Seller contracts to purchase property insurance on behalf of the Buyer, and that insurance is cancelled by the insurance company prior to its scheduled expiration date, Seller will attempt to place comparable coverage with another insurance company on behalf of the Buyer. If Seller is unable to do so, Seller will notify Buyer and pay to Buyer any additional costs incurred by the Buyer in obtaining replacement insurance for the unexpired period of the original insurance policy. By signing and dating the Contract, as Seller, delivering the Contract to the Assignee and accepting payment for it, Seller authorizes the Assignee to act as the Seller's agent for the purpose of completing or correcting the identification of the Assignee in this Assignment to reflect the true Assignee who purchased the Contract and/or for the purpose of signing Seller's name to this Assignment, without recourse, if the Assignment is delivered without the Seller's signature. Assignee may exercise the power given in this paragraph for the benefit of the Assignee and not for the benefit of the Seller. Seller does not have the right to and agrees not to revoke the power given in this paragraph.

In the event that Seller is required by this Assignment to repurchase the Contract and/or Vehicle, Seller shall pay to Assignee, in cash, the full unpaid balance of the Contract as of the date of repurchase, plus any then earned Finance Charge and any and all costs and expenses paid or incurred by Assignee in respect thereto, including reasonable attorneys' fees, in connection with claims by or against any Buyer, Owner or persons in possession of the Vehicle and/or by or against Seller.

For value received, Seller hereby sells, assigns and transfers unto the Assignee, its successors and assigns, the within Contract, all moneys due and to become due thereunder, and all right, title and interest in and to the Vehicle therein described, with full power in the Assignee in its or our name to take such legal or other action which we might have taken save for this Assignment. Unless Seller marks either of the endorsements below, titled "WITH FULL RECOURSE" or "WITH REPURCHASE," Seller's assignment shall, except for the provisions of the paragraph titled "Assignment," be without recourse.

☐ WITH FULL RECOURSE—Seller agrees that, in addition to the paragraph above titled "Assignment," in the event of default by Buyer in the full payment on the due date thereof of any installment payable under the Contract or in the prompt performance of any other obligation to be performed under the Contract by Buyer, Seller will, on demand by Assignee, forthwith repurchase the Contract from Assignee for a repurchase price, in cash, computed as set forth above.

☐ WITH REPURCHASE—Seller agrees that, in addition to the provisions of the paragraph above titled "Assignment," in the event of any default by Buyer which shall entitle Assignee to repossess the Vehicle, Seller will, if the Vehicle is repossessed by Assignee and delivered to Seller, and without regard to the then condition of the Vehicle, forthwith repurchase the Contract and the Vehicle from Assignee for a repurchase price, in cash, computed as set forth above.

By signing below, we agree to the terms of the Assignment.

Seller _____ By _____

Date _____

FORM CBNARSMVDCPA (PAS123DCSLC-3) 2/17/2010 **(L-318pa)**
© 2004 Wolters Kluwer Financial Services - BANCO



## Vehicle Information

| | |
|---|---|
| Vehicle: | 2012 Ford Fusion Sedan 4D SE 2.5L I4 |
| Region: | Eastern |
| Period: | April 17, 2019 |
| VIN: | 3FAHP0HA8CR138794 |
| Mileage: | 97,500 |
| Base MSRP: | $22,830 |
| Typically Equipped MSRP: | $24,165 |



## NADA Used Cars/Trucks Values

| Trade-In | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Rough | $3,425 | N/A | N/A | **$3,425** |
| Average | $4,325 | N/A | N/A | **$4,325** |
| Clean | $5,075 | N/A | N/A | **$5,075** |
| | | | | |
| Clean Loan | $4,575 | N/A | N/A | **$4,575** |
| Clean Retail | $7,025 | N/A | N/A | **$7,025** |

NADA Used Car Guide assumes no responsibility or liability for any errors or omissions or any misdoneer condition made by anyone on this report.

Case 5:19-bk-01314-RNO    Doc 10    Filed 05/10/19    Entered 05/10/19 14:21:36    Desc
Main Document    Page 15 of 16

# Title

VIN/HIN: **3FAHP0HA8CR138794**   State: **PA**   Title Number: **72749036**
Year: **2012**   Make/Builder: **FORD**   Model: **F/E**

| **Overview** | Owners | Property | Liens | Title Maint |

Owner(s): **GIVEN,ANN MARIE**                    Closed Date:
Lienholder: **COMMUNITY BANK, N.A.**        Closed Reason:
Match Type: **AUTOMATIC**                      Document Location:
Match Date: **4/30/2014**
Issuance Date: **4/30/2014**
Imported Date: **4/30/2014**